GEORGE RIKOS, Esq. (SBN 204864)
**THE LAW OFFICES OF GEORGE RIKOS**
1307 Stratford Court
Del Mar, Ca 92014
Telephone: (858) 342-9161
Facsimile: (858) 724-1453
Email: George@georgerikoslaw.com

Attorneys for Plaintiff
Anthony Santiago

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTHONY SANTIAGO, an individual; on behalf of himself and all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>JPMORGAN CHASE & CO., a Delaware corporation; JPMORGAN CHASE BANK, N.A., a New York corporation; CHASE BANK USA, NATIONAL ASSOCIATION, a Delaware corporation,<br><br>Defendants. | CASE NO.: '11CV2605 IEG BGS<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT;**<br>**(2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>**(3) UNJUST ENRICHMENT;**<br>**(4) VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 ET. SEQ.;**<br>**(5) CONVERSION**<br><br>Courtroom:<br>Judge:<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff ANTHONY SANTIAGO, individually and on behalf of all others similarly situated (hereinafter collectively "Plaintiff"), hereby complains, demands a jury trial, and alleges on information and belief as follows:

## I.

## INTRODUCTION

1. This action arises out of the defendants' unlawful and unfair sale of insurance products to customers in California. Defendants, and each of them, engaged in deceptive, illegal, and predatory practices in the sale of their insurance products to their customers.

2. At all relevant times, defendants JPMORGAN CHASE & CO.; JPMORGAN CHASE BANK, N.A.; and, CHASE BANK USA, NATIONAL ASSOCIATION (collectively "CHASE" or "Defendants"), and their related entities, sold insurance products to their customers that they did not want, without making the appropriate disclosures, and without complying with state and federal laws regarding such practices.

3. CHASE's standardized business practices caused significant, yet untold, damages to the plaintiffs, which they hope to recoup through this action.

## II.

## PARTIES

4. Plaintiff ANTHONY SANTIAGO (hereinafter "SANTIAGO") is an individual who at all relevant times resided, and continues to reside in the State of California, County of San Diego.

5. Defendant JPMORGAN CHASE & CO. (hereinafter "CHASE & CO") is a Delaware corporation authorized to do business and doing business in the State of California and County of San Diego in particular. CHASE & CO's principal place of business is New York, New York.

6. Defendant JP MORGAN CHASE BANK, N.A. ("JPM CHASE BANK") is a New York corporation, and a California foreign corporation authorized to do business and doing business in the State of California and County of San Diego in particular. JPM CHASE BANK is a subsidiary of CHASE & CO.

7. Defendant CHASE BANK, NATIONAL ASSOCIATION (hereinafter "CHASE NA") is a Delaware corporation authorized to do business and doing business in the State of California and County of San Diego in particular. CHASE NA's principal place of business is Newark, Delaware. CHASE & CO, JPM CHASE BANK and CHASE NA are hereinafter collectively referred to as "CHASE."

**III.**

**JURISDICTION AND VENUE**

8. Jurisdiction and venue are appropriate because JPM CHASE BANK is a California foreign corporation. Furthermore, this Court has personal jurisdiction over each and every defendant because each of the defendants, at all relevant times conducted and/or continue to conduct business in the State of California, County of San Diego, and Defendants, and each of them, offered and sold insurance products in the State of California. Defendants further illegally and inappropriately sold said insurance products in the State of California. Defendants have sufficient minimum contacts with California and intentionally availed themselves of the laws of the State of California by advertising and conducting transactions therein.

9. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because this Complaint alleges a California class whose members are minimally diverse from the Defendants. Plaintiff is now informed and believes that he is entitled to restitution and damages in an amount greater than $5,000,000, which requires Plaintiff to bring this action in Federal court pursuant to the Class Action Fairness Act of 2005. 28 U.S.C. § 1711 *et. seq*. The action exceeds $5,000,000 in damages, the class is larger than 100, and there is one defendant that is a citizen of a different state than the Plaintiff. Plaintiff therefore brings this action to protect and preserve the rights of class members to complete restitution and recovery of damages.

10. This Court also has federal question subject matter jurisdiction over the action under 28 U.S.C. § 1331 as this action arises under the 12 C.F.R. §343-10-343-60.

11. This Court has federal jurisdiction pursuant to 28 U.S.C. § 1332 diversity jurisdiction. Plaintiff SANTIAGO is a California citizen. Defendant CHASE & CO is a citizen of

Delaware and New York. Defendant JPM CHASE BANK is a citizen of New York and Ohio. Defendant CHASE NA is a citizen of Delaware.

## IV.

## CLASS ALLEGATIONS

12. Plaintiff re-alleges and incorporate by reference each and every allegation contained above, as if set forth at this point.

13. Plaintiff brings this Complaint as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure on behalf of all CHASE customers who entered into a transaction in the State of California where they were deceptively, illegally, and improperly sold insurance products.

14. At all relevant times, SANTIAGO maintained his bank accounts with Washington Mutual Bank, which was eventually purchased by CHASE. In approximately March of 2009, without any prior notice, consent, or disclosure, CHASE foisted upon or sold SANTIAGO an Accident Insurance Coverage Policy by National Union Fire Insurance Company, a subsidiary of American International Group, Inc. ("AIG"). Unbeknownst to SANTIAGO, CHASE started providing SANTIAGO with one year of "free" premiums under the policy, but then debited his bank account beginning on or about March of 2010. CHASE continues to debit SANTIAGO'S bank account, for this insurance policy, to this day and despite MR. SANTIAGO'S written objections.

15. In or about December of 2010, SANTIAGO first discovered that his CHASE bank account was being debited for the Accidental Insurance Policy. Upon making this discovery, SANTIAGO immediately filed a consumer complaint with CHASE. CHASE never responded.

16. To date, CHASE has not refunded, reversed, or stopped the illegal charges for the subject insurance policy.

17. Upon information and belief, a vast number of consumers have suffered the same harm as SANTIAGO under similar circumstances. As a result of CHASE's actions, SANTIAGO and his fellow consumers are left vulnerable and with less money in the current ominous national economy, to the benefit of CHASE, and even after the U.S. government and its citizens provided

"bailout" money to JPM CHASE BANK and other banks, including the related defendants, to provide for the continued stability of the lending industry. The defendants have simply created another deceptive revenue stream.

18. The members of the class are so numerous that separate joinder of each member is impractical. It is estimated that the number of class members exceeds 100,000. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Furthermore, the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications and would necessarily be dispositive of claims owned by non-party class members. The proposed class shall be defined by the following class:

> All preexisting Chase account holders in the State of California who were enrolled in or sold a National Union Fire Insurance Company insurance product, with one year of "free" premiums under the policy.

19. The claims of the representative plaintiff raise questions of law and fact that are common to questions of law and fact raised by the claims of each member of the class.

20. The claims of the representative plaintiff are typical of the claims of each member of the class.

21. The questions of law or fact common to the claims of SANTIAGO and his fellow class members predominate over any individual questions. Class representation is superior to other available methods for the fair and efficient adjudication of this controversy.

22. Questions of law and/or fact that are common include but are not limited to:

(A) Whether Defendants' conduct violates Code of Federal Regulation Sections 343.10-343.60;

(B) Whether Defendants' conduct constitutes a breach of contract;

(C) Whether Defendants' conduct constitutes a breach of the implied covenant of good faith and fair dealing;

(D) Whether Defendants have been unjustly enriched;

(E) Whether Defendants' actions alleged herein constitute unfair or unlawful business practices as proscribed by California Business & Professions Code

section 17200 et seq.;

(F) Whether Defendants' conduct constitutes conversion under California law;

(G) Whether Defendants sold insurance products without adequate disclosure;

(H) What were the Defendants' procedures for the sale of insurance products; and

(I) Whether Defendants complied with their own procedures.

23. SANTIAGO's claims are typical of the claims of the class in that the claims of all members of the class result from CHASE's illegal and unfair practice of selling insurance products in a deceptive manner and unlawful manner.

24. There is no conflict between the representative plaintiff and other members of the class with respect to this action, or with respect to the claims for relief herein set forth.

25. The majority of the class members are expected to be geographically located in the State of California.

26. SANTIAGO will serve as an adequate representative for the class and is able to and will fairly and adequately protect the interests of the class.

**V.**

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**
**By Plaintiff Against All Defendants**

37. Plaintiff re-alleges and incorporates by reference each and every allegation contained above as if set forth at this paragraph.

38. Plaintiff entered into a written agreement when he chose to open a bank account with CHASE.

39. Plaintiff fully performed all obligations required of him as a bank account holder.

40. CHASE materially breached the bank account agreement by purporting to sell Plaintiff an insurance product without providing any disclosures or notices and/or without obtaining his consent.

41. Code of Federal Regulations, Regulation 343.10 provides for consumer protections in connection with the retail sales practices, solicitations, advertising, or offers of any insurance

product or annuity to a consumer by: (a) Any Bank or (b) any other person that is engaged in such activities at an office of the bank or on behalf of the bank.

42. Regulation 343.30(b) specifically states that CHASE may not engage in any practice or use any advertisement at any office of, or on behalf of, the bank or a subsidiary of the bank that could mislead any person or otherwise cause a reasonable person to reach an erroneous belief.

32. Regulation 343.40 provides that CHASE, as a bank, must disclose to the consumer that:

> "1) The insurance product or annuity is not a deposit or other obligation of, or guaranteed by, the bank or an affiliate of the bank; (2) The insurance product or annuity is not insured by the Federal Deposit Insurance Corporation (FDIC) or any other agency of the United States, the bank, or (if applicable) an affiliate of the bank; and(3) In the case of an insurance product or annuity that involves an investment risk, there is investment risk associated with the product, including the possible loss of value.
>
> (b) *Credit disclosure.* In the case of an application for credit in connection with which an insurance product or annuity is solicited, offered, or sold, you must disclose that the bank may not condition an extension of credit on either:
>
> (1) The consumer's purchase of an insurance product or annuity from the bank or any of its affiliates; or
>
> (2) The consumer's agreement not to obtain, or a prohibition on the consumer from obtaining, an insurance product or annuity from an unaffiliated entity.
>
> (c) *Timing and method of disclosures.*(1) *In general.* The disclosures required by paragraph (a) of this section must be provided orally and in writing before the completion of the initial sale of an insurance product or annuity to a consumer. The disclosure required by paragraph (b) of this section must be made orally and in writing at the time the consumer applies for an extension of credit in connection with which an insurance product or annuity is solicited, offered, or sold.
>
> (2) *Exception for transactions by mail.* If a sale of an insurance product or annuity is conducted by mail, you are not required to make the oral disclosures required by paragraph (a) of this section. If you take an application for credit by mail, you are not required to make the oral disclosure required by paragraph (b).
>
> (3) *Exception for transactions by telephone.* If a sale of an insurance product or annuity is conducted by telephone, you may provide the written disclosures required by paragraph (a) of this section by mail within 3 business days beginning on the first business day after the sale, excluding Sundays and the legal public holidays specified in 5 U.S.C. 6103(a). If you take an application for credit by telephone, you may provide the written disclosure required by paragraph (b) of this section by mail, provided you mail it to the consumer

within three days beginning the first business day after the application is taken, excluding Sundays and the legal public holidays specified in 5 U.S.C. 6103(a).

(4) *Electronic form of disclosures.* (i) Subject to the requirements of section 101(c) of the Electronic Signatures in Global and National Commerce Act (12 U.S.C. 7001(c)), you may provide the written disclosures required by paragraph (a) and (b) of this section through electronic media instead of on paper, if the consumer affirmatively consents to receiving the disclosures electronically and if the disclosures are provided in a format that the consumer may retain or obtain later, for example, by printing or storing electronically (such as by downloading).

(ii) Any disclosure required by paragraphs (a) or (b) of this section that is provided by electronic media is not required to be provided orally.

(5) *Disclosures must be readily understandable.* The disclosures provided shall be conspicuous, simple, direct, readily understandable, and designed to call attention to the nature and significance of the information provided. For instance, you may use the following disclosures in visual media, such as television broadcasting, ATM screens, billboards, signs, posters and written advertisements and promotional materials, as appropriate and consistent with paragraphs (a) and (b) of this section:

* NOT A DEPOSIT

* NOT FDIC-INSURED

* NOT INSURED BY ANY FEDERAL GOVERNMENT AGENCY

* NOT GUARANTEED BY THE BANK

* MAY GO DOWN IN VALUE

(6) *Disclosures must be meaningful.* (i) You must provide the disclosures required by paragraphs (a) and (b) of this section in a meaningful form. Examples of the types of methods that could call attention to the nature and significance of the information provided include:

(A) A plain-language heading to call attention to the disclosures;

(B) A typeface and type size that are easy to read;

(C) Wide margins and ample line spacing;

(D) Boldface or italics for key words; and

(E) Distinctive type size, style, and graphic devices, such as shading or sidebars, when the disclosures are combined with other information.

(ii) You have not provided the disclosures in a meaningful form if you merely state to the consumer that the required disclosures are available in printed material, but do not provide the printed material when required and do not orally disclose the information to the consumer when required.

(iii) With respect to those disclosures made through electronic media for which paper or oral disclosures are not required, the disclosures are not meaningfully provided if the consumer may bypass the visual text of the disclosures before purchasing an insurance product or annuity.

(7) *Consumer acknowledgment.* You must obtain from the consumer, at the time a consumer receives the disclosures required under paragraphs (a) or (b) of this section, or at the time of the initial purchase by the consumer of an insurance product or annuity, a written acknowledgment by the consumer that the consumer received the disclosures. You may permit a consumer to acknowledge receipt of the disclosures electronically or in paper form. If the disclosures required under paragraphs (a) or (b) of this section are provided in connection with a transaction that is conducted by telephone, you must:

(i) Obtain an oral acknowledgment of receipt of the disclosures and maintain sufficient documentation to show that the acknowledgment was given; and

(ii) Make reasonable efforts to obtain a written acknowledgment from the consumer.

(d) *Advertisements and other promotional material for insurance products or annuities.* The disclosures described in paragraph (a) of this section are required in advertisements and promotional material for insurance products or annuities unless the advertisements and promotional materials are of a general nature describing or listing the services or products offered by the bank.

33. Code of Federal Regulation Section 343.60 further requires that a bank may not permit any person to sell an insurance product without the proper license as required under the State of California insurance standards.

34. Here, Defendants are a bank and thus subject to the above Code of Federal Regulations. Furthermore, Defendants, as a bank, were in the business of selling its customers, including the Plaintiff, various insurance products.

35. Defendants never provided any disclosures to Plaintiff regarding any insurance products. Furthermore, Defendants never obtained any written or verbal consent for the purchase of the insurance product from Plaintiff. This is because Plaintiff never consented to the purchase of any insurance products as part of the bank account agreement. Defendants therefore breached the terms of the bank account agreement.

36. As a result, Plaintiff has suffered damages in the form of unlawful charges to his bank account, lost interest, loss of use of funds, attorneys' fees, adverse effects on Plaintiffs' credit scores and other damages to be proven at trial. SANTIAGO, on behalf of himself and the

putative class, seeks damages for breach of contract as well as interest and attorneys' fees as allowed by law.

## VI.

## SECOND CAUSE OF ACTION
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**
**By Plaintiff Against All Defendants**

37. Plaintiffs re-allege and incorporate by reference each and every allegation above as if set forth at this paragraph

38. Implied in every contract is a covenant of good faith and fair dealing, which prevents CHASE from engaging in conduct frustrating Plaintiff's rights to benefits under his contract or that would injure the Plaintiff's right to receive the benefits of the his contract.

39. CHASE materially breached the agreement by (1) selling an insurance product to SANTIAGO without making any disclosures, (2) failing to obtain any consent from SANTIAGO, (3) charging SANTIAGO'S bank account for the insurance product without obtaining authority from him, (4) continuing to charge SANTIAGO'S bank account for insurance premiums after he disputed the aforementioned charges.

40. An implied term in the Agreement is to abide by obligatory federal and state laws, including but not limited to Code of Federal Regulations, Regulations 343.10-343.60, California Unfair Competition Laws, and state and federal common law.

41. CHASE's breach of the implied covenant of good faith and fair dealing and those above-referenced laws caused Plaintiff to incur damages in the form of bank fees, increased price of credit, damage to Plaintiff's credit scores, loss of use of funds, loss of interest, and other damages to be proven at trial.

42. SANTIAGO, on behalf of himself and the putative class, seeks damages for breach of the implied covenant of good faith and fair dealing and interest and attorney's fees and costs where allowed.

## VII.

## THIRD CAUSE OF ACTION
**(Unjust Enrichment)**
**By Plaintiff Against All Defendants**

43. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the paragraphs above as if set forth at this paragraph.

44. In connection with its deceptive and unlawful practices, CHASE knowingly received money (including insurance premiums) and other benefits from Plaintiff the circumstances of which would render CHASE's retention of said benefits unjust.

45. As an actual and proximate result of CHASE's actions, Plaintiff has incurred damages in the form of lost premiums, loss of use of funds, late charges, loss of interest, loss of business opportunity and other damages.

46. SANTIAGO, on behalf of himself and the putative class, seeks damages, disgorgement, and return of all revenue and profits gained through this unjust enrichment, along with interest and attorney's fees and costs where allowed.

## VIII.

## FOURTH CAUSE OF ACTION
**(Violation of California Business & Professions Code Section 17200 et. seq.)**
**By Plaintiff Against All Defendants**

47. Plaintiff re-alleges and incorporates by reference each and every allegation contained above as if set forth at this paragraph.

48. California's Unfair Competition Law ("UCL") defines unfair competition to include any "unfair," "unlawful," or "fraudulent" business act or practice. Cal. Bus. & Prof. Code, § 17200. The UCL provides for injunctive relief and restitution for violations. Cal. Bus. & Prof. Code, §17203.

49. CHASE's actions constitute unfair business acts and practices under the UCL. In the course of conducting business, CHASE, among other actions and omissions herein alleged, chose to engage in deceptive and improper practices in the sale of insurance products. Namely, they, without providing any disclosures or obtaining any consent or authorization, sold Plaintiff an insurance policy and began automatically charging Plaintiff premiums from his bank account.

There is no justification for such acts and practices and such acts are "unfair" as that term is defined by the UCL.

50. With respect to the "unlawful" prong, the UCL "borrows" other laws, and unlawful business acts under the UCL are those which are in violation of any federal, state, county, or municipal statutes or codes, as well as regulations including the Code of Federal Regulations. Defendants' actions and omissions constitute unlawful business acts and practices because they violated various laws including the Code of Federal Regulations, as alleged herein.

51. CHASE's acts are also "fraudulent" under the UCL because they are likely to deceive reasonable consumers.

58. CHASE'S improper business practices present a continuing threat to members of the general public in that CHASE is continuing, and will continue, unless enjoined, to commit unlawful and unfair business acts or practices. Plaintiff requests that this Court order, as it is empowered to order, a preliminary and permanent injunction against such acts and practices.

52. SANTIAGO, on behalf of himself and all other similarly situated, seeks all available equitable remedies, including but not limited to a constructive trust over the available credit seized by Defendants, unjust enrichment, restitution and disgorgement of benefits realized by the Defendants as a result of their conduct.

53. SANTIAGO, on behalf of himself and the putative class, also seeks recovery of all attorneys' fees and litigation expenses pursuant to, among other applicable provisions, California Code of Civil Procedure, section 1021.5. Alternatively, SANTIAGO, on behalf of himself and the putative class, seeks recovery of all attorneys' fees and all litigation expenses pursuant to the substantial benefit doctrine. SANTIAGO, on behalf of himself and the putative class, also seeks recovery of all attorneys' fees and other litigation expenses to be paid under the common fund doctrine or other authority requiring CHASE to pay Plaintiffs' attorneys' fees and litigation expenses.

## IX.

## FIFTH CAUSE OF ACTION
**(Conversion)**
**By Plaintiff Against All Defendants**

54. Plaintiff re-alleges and incorporates by reference each and every allegation contained above as if set forth at this paragraph.

55. Plaintiff had a right to possession of funds as available on deposit with Defendants.

56. Defendants unlawfully debited and charged Plaintiff's account in violation of, among other laws, the Code of Federal Regulations and California UCL. These improper and unlawful charges and debits were wrongful and deprived, and continue to deprive, Plaintiff of his own funds.

57. SANTIAGO, on behalf of himself and the putative class, seeks compensatory damages pursuant to California Civil Code section 3336 and any other applicable law. SANTIAGO, on behalf of himself and the putative class, further seeks the remedy of a constructive trust and equitable lien.

58. In addition to the compensatory damages described above, CHASE's conduct was outrageous and despicable, warranting an award of exemplary and punitive damages. CHASE is guilty of malice, fraud and/or oppression as defined in California Civil Code section 3294. SANTIAGO, on behalf of himself and the putative class, seeks exemplary and punitive damages, in an amount to be proven at the time of trial.

## X.

## PRAYER FOR RELIEF

WHEREFORE, SANTIAGO, on behalf of himself and the putative class members, prays for judgment against the defendants, and each of them, as follows:

1. Certifying the action as a class action and designating SANTIAGO as class representative and his counsel as class counsel;
2. For actual damages in an amount to be proven at trial where permissible;
3. For declaratory relief finding that Defendants have engaged in unfair, unlawful, or fraudulent business acts or practices in violation of the California UCL and Federal

Regulations and that CHASE be required to pay restitution to all persons from whom it unlawfully, unfairly, or fraudulently sold insurance products to;

4. For a temporary restraining order and a preliminary and permanent injunction enjoining CHASE and their officers, directors, agents, distributors, servants, employees, attorneys, and all others in active concert or participation with CHASE, or any of them, jointly and severally, during the pendency of this action and permanently thereafter from deceptively and fraudulent selling insurance products;

5. For a constructive trust and/or equitable lien over the funds improperly seized;

6. For equitable and injunctive relief, including but not limited to restitution, unjust enrichment, and disgorgement of benefits realized CHASE as a result of its conduct;

7. For punitive damages under California Civil Code section 3294 where allowable;

8. For interest at the maximum rate allowed by law;

9. For costs of suit;

10. For attorneys' fees and all litigation expenses pursuant to the California Civil Code Section 1750,1780(d) and California Code of Civil Procedure Section 1021.5. Alternatively, for all attorneys' fees and all litigation expenses to be awarded pursuant to the substantial benefit doctrine, the common fund doctrine, pre- and post-judgment interest, or any other provision of law; and

11. For such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

SANTIAGO, individually and on behalf of all others similarly situated, hereby demands a trial by jury of all issues so triable.

Dated: November 8, 2011

By: [signature]
George Rikos, Esq.